1 DAVID L. ANDERSON (CABN 149604)
United States Attorney

2
HALLIE HOFFMAN (CABN 210020)
3 Chief, Criminal Division

4 LINA PENG (NYBN 5150032)
Assistant United States Attorneys
5
  450 Golden Gate Avenue, Box 36055
6 San Francisco, California 94102-3495
  Telephone: (415) 436-7200
7 FAX: (415) 436-7027
  Lina.Peng@usdoj.gov
8
Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 19-00232 WHA |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| TREVOR WALSH, | Date: April 8, 2020<br>Time: 2:00 p.m. |
| Defendant. | Hon. William Alsup |

Mr. Walsh was indicted in May 2019, with illegally possessing machineguns and pleaded guilty to that charge in January 2020. His behavior leading up to and subsequent to being charged demonstrates a pattern of high-risk conduct involving firearms and drugs that poses danger to the community and to himself. A sentence that reflects the Congressional goals of specific deterrence, general deterrence, and punishment is needed. The government submits this sentencing memorandum in support of its recommendation that the Court sentence Mr. Walsh to 27 months of imprisonment, followed by 3 years of supervised release.

//

//

GOV'T SENTENCING MEMO        1
CR 19-00232

# BACKGROUND

## A. Offense Conduct

On May 16, 2019, an Indictment was filed against Mr. Walsh for one count of possession of machineguns, in violation of Title 18, United States Code, Section 922(o).

On April 19, 2019, federal and state law enforcement executed a search warrant at Mr. Walsh's residence in San Rafael, California. (PSR ¶ 6.) Mr. Walsh had been identified as a recipient of two packages containing fully automatic Glock switches from a known shipper of such devices in China. (*Id.*) A fully automatic Glock conversion switch is a device that can be inserted onto a Glock-style firearm in order to convert a semi-automatic firearm into a fully automatic one. Under the law, such a device is defined as a machinegun because it converts a weapon into a machinegun. 18 U.S.C. §§ 922(o); 921(a).

The search of Mr. Walsh's revealed the following items:

- One Glock conversion switch installed onto a 9 mm Glock-style firearm, loaded with one round in the chamber
- A second Glock conversion switch
- 26 rounds of ammunition
- Two holsters
- One magazine
- One buttstock for handgun
- Two silencers
- One suppressor baffle
- Drugs and drug paraphernalia to include: glass pipe, waterpipe, scale, baggies, suspected LSD analog and suspected mushrooms

(*See id.* ¶ 7; Peng Decl. Ex. A at 2-3.) The search of Mr. Walsh's laptop revealed visits to websites related to ghost guns, including one website with the title "Build Unregistered 300 AAC Blackout Rifle" and another with the title "AK47 – Ghost Guns." (Peng Decl. Ex. A at 5.)

On January 14, 2020, Mr. Walsh pleaded guilty, pursuant to a plea agreement, to the one count in the Indictment. Sentencing is scheduled for April 8, 2020.

### B. Criminal History

In 2008, Mr. Walsh was convicted, after a United States Army General Court Marshal, of wrongful distribution, possession and use of hallucinogens. (PSR ¶ 25.) He was sentenced to 3 years of confinement and dishonorably discharged. According to army records, Mr. Walsh provided ecstasy pills to another individual, who then sold it a third individual. (*Id.*) That third individual, an enlistee in the army, ingested the pills and died from an overdose due to the toxic effects of ecstasy. (*Id.*)

In 2015, Mr. Walsh was arrested in Marin County for battery, related to him striking two victims in the face and head at a bar in San Rafael. (*Id.* ¶ 29.) In February 2016, the matter was placed in diversion status for 24 months, requiring that Mr. Walsh complete volunteer work, complete an anger management program, and stay at least 100 yards away from the victims. (*Id.*) In February 2018, Mr. Walsh failed to appear in court to provide proof of the completion of the terms of the diversion, and a bench warrant was issued. (*Id.*) The case is currently set for a change of plea on April 22, 2020, in Marin County Superior Court. (*Id.*)

In September 2018, Mr. Walsh was arrested in Marin County for possession of a loaded and concealed firearm, possession of a silencer, possession of a dirk, illegal firearms and nitrous oxide canisters. (*Id.* ¶ 30.) Police found Mr. Walsh lying face down on a sidewalk, with a backpack within arm's reach. (*Id.*) According to the police report, the backpack contained a firearm with a magazine, a 4.5 inch dirk, a homemade silencer, a gun holster, illegal fireworks, nine cans of spray paint, and three "whippet" nitrous oxide canisters. (*Id.*) The firearm lacked a serial number. (*Id.*) When officers tried to interview Mr. Walsh, he had to be woken up from what appeared to be a deep sleep, and continued to exhibit extreme tiredness. (*Id.*) The case is currently set for trial on April 22, 2020, in Marin County Superior Court. (*Id.*)

### C. Record on Pre-trial Release

On May 24, 2019, Mr. Walsh was arraigned. On May 28, 2019, a detention hearing was held. The government requested that Mr. Walsh be placed at a halfway house. The Court released the defendant to reside at his prior address.

On July 8, 2019, pre-trial services issued a violation notice, after Mr. Walsh tested presumptively positive for methamphetamine during a scheduled office visit. Mr. Walsh admitted to using

methamphetamine after the testing. He was referred to participate in outpatient counselling at Center Point. Mr. Walsh further was meeting with a psychiatrist for medication monitoring relating to his PTSD diagnosis.

On September 25, 2019, pre-trial services issued another violation notice. The notice reported that Mr. Walsh had tested positive for methamphetamine on August 22, 2019, August 30, 2019, September 5, 2019, and September 23, 2019. On September 26, 2019, a bond hearing was held by the Court and the defendant was permitted additional time to confirm his eligibility to receive additional services from Veterans Affairs. On October 9, 2019, the Court held a further bond hearing and confirmed that the defendant had started receiving services from Veterans Affairs, and warned that he would be sent to in-patient treatment if there were further violations.

On November 1, 2019, pre-trial services issued another violation notice. The notice reported that Mr. Walsh had admitted to relapsing and used methamphetamine daily from October 24 through October 28, 2019. Mr. Walsh reported to pre-trial and submitted a presumed positive test for methamphetamine and admitted use. The Court held a bond hearing on November 4, 2019, and referred Mr. Walsh to residential treatment at the New Bridge Foundation. He was accepted and ordered into the program on November 18, 2019.

On November 23, 2019, pre-trial services reported that Mr. Walsh walked away from New Bridge. He reported to pre-trial that he went to the ER on the prior day, and was told he had pulmonary nodules on his lungs and should make an appointment with his primary care physician and a specialist. Mr. Walsh became concerned about his health, and left treatment to be with his family. He reported to pre-trial services on November 25, 2019, and tested positive for methamphetamine. The Court held a bond hearing on November 25, 2019, and ordered Mr. Walsh to return to New Bridge immediately after his doctor's appointment, and to stay in touch with pre-trial services regarding any follow-up medical appointments. Another test taken on November 26, 2019, at New Bridge also returned positive for methamphetamine use.

On December 9, 2019, pre-trial services reported that he walked away from New Bridge. He was writing letters to a female participant. When confronted about his November 26, 2019, positive drug test and the letter writing, he walked away.

On December 10, 2019, the Court held a bond hearing, and remanded Mr. Walsh to custody. At the hearing, defense proffered that Mr. Walsh's doctor had indicated that he is at risk of death if he further used methamphetamine based on his health conditions.

On March 25, 2020, Mr. Walsh filed a motion for release pursuant to 18 U.S.C. § 3142(i) on the basis of the COVID-19 outbreak. (ECF No. 40.) The government filed on opposition on the same day. (ECF No. 41.) A hearing was held on the motion on March 27, 2020, and a second hearing was held on March 31, 2020. Magistrate Judge Ryu ordered Mr. Walsh released, modifying the prior bond to change his sister from a surety to a custodian, and adding the condition that he stay at her home on lockdown. The government appealed on the same day, and the appeal is presently pending before the Court with another hearing scheduled for April 2, 2020 at 10 a.m.

## DISCUSSION

### I. The Defendant's Sentencing Guidelines Calculation.

The government is in agreement with Probation's calculation of the Guidelines, which is also reflected in the parties' plea agreement. Specifically, Mr. Walsh' total offense level is 17 and his criminal history category is II, which corresponds to a Guidelines range of 27 to 33 months of imprisonment. U.S. Probation has recommended a sentence of 15 months of imprisonment, and 3 years of supervised release to follow.

### II. Sentencing Recommendation

#### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. The Government's Recommended Sentence Is Sufficient But Not Greater Than Necessary.

Mr. Walsh has exhibited a long history—leading up to the instant federal charges and since he was charged—of high-risk conduct that poses a danger to the community and to himself. A sentence at the low end of the applicable Guidelines range appropriately balances the factors under 18 U.S.C. § 3553(a).

First, the offense committed by Mr. Walsh is serious: he built a machinegun. More specifically, he installed a Glock automatic switch to a Glock-style firearm for the purpose of converting it to a fully automatic firearm. When installed onto a Glock-style firearm, the firearm functions exactly like a machinegun, firing automatically more than one shot by a single pull of the trigger, similar to the purpose of a bump stock. Thousands of these illegal machineguns have been smuggled into the United States from China, in many instances into the hands of felons and other high-risk individuals.[1] The risk posed by these illegal parts in the hands of individuals who can easily order them off the Internet and then build deadly weapons cannot be understated.

Second, Mr. Walsh's penchant for building firearms, combined with his drug addiction and mental health issues, poses a serious danger to the community. In 2008, Mr. Walsh, while enlisted in the U.S. Army, distributed ecstasy that led to the death of another enlistee. For that offense, he received 3 years of confinement after a general court martial. This terrible incident apparently did not deter Mr. Walsh from further use of illegal substances or engaging in high-risk behavior. In 2015, after being charged with battery in a bar and granted diversion, Mr. Walsh failed to appear to provide proof of completing his diversion steps. That case is still pending out of Marin County. This failure to follow another court order, despite being given a chance at diversion demonstrates a concerning pattern of

---

[1] *See, e.g.*, CNN, *ATF on the hunt for thousands of illegal machine gun conversion devices smuggled into US* (May 23, 2019), available at https://www.cnn.com/2019/05/23/us/atf-agents-hunting-down-illegal-machine-gun-device-invs/index.html.

conduct for Mr. Walsh.

Then, disturbingly in September 2019, Mr. Walsh was found lying face down on the sidewalk by police. Next to him in a backpack was a firearm, a 4.5 inch dirk, a homemade silencer, a gun holster, illegal fireworks, nine cans of spray paint, and three nitrous oxide canisters. That firearm lacked a serial number. That Mr. Walsh someone got himself so much under the influence that he was passed out on a public sidewalk, and with dangerous items next to him. On the day of his arrest for the instant crime, as described above, in addition to the Glock automatic conversion switches, they found a loaded 9 mm Glock-style firearm, ammunition, holsters, two silencers, a magazine, a buttstock, a suppressor baffle. They also found suspected drugs and drug paraphernalia. The repeated combination of Mr. Walsh simultaneous possession of drugs and firearms is highly concerning. Up until now, Mr. Walsh has been involved in one instance of battery and no other acts violence. But protection of the public demands a sober assessment of future risk and warning signs.

The government's view, the best predictor of Mr. Walsh's future conduct is shown by what the Court knows for certain: his track record on pre-trial release. Mr. Walsh's incentive to follow through with Court orders were extremely high indeed when he was faced the possibility of remand into custody, possibly a higher sentence, and a real threat to his own health. But Mr. Walsh's pre-trial conduct has clearly demonstrated, even in the face of every incentive, that he is unwilling or unable to follow the rules set for him. Mr. Walsh was given repeated opportunities by the Court over the span of about six months while he was on pre-trial release to work on overcoming his addiction through drug treatment and mental health counseling. Indeed, the government does not disagree that Mr. Walsh is in need of such help. But even with the best support afforded to him, Mr. Walsh did not follow through with receiving that help. With close supervision by pre-trial, professional drug counseling and professional mental health counselling, Mr. Walsh nonetheless failed two programs and tested positive no less than eleven times for methamphetamine. His demonstrated inability to change his behavior and follow rules is particularly concerning in light of his history of building illegal weapons, drug addiction, and mental health issues. The protection of the community from Mr. Walsh's conduct requires a significant sentence here.

## CONCLUSION

For the foregoing reasons, the government recommends that the Court impose a sentence at the low-end of the applicable Guidelines range, followed by 3 years of supervised release, a special assessment, and forfeiture.

DATED: April 1, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/
LINA PENG
Assistant United States Attorney